**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD M. McGUCKIN,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **BRANDYWINE REALTY TRUST, and** | **NO.  16-290** |
| **H. JEFFREY DEVUONO,** | |
| **Defendants.** | |

**DuBois, J.**                                                          **May 4, 2016**

**M E M O R A N D U M**

### I.      INTRODUCTION

This case arises out of plaintiff Richard M. McGuckin's employment by defendant
Brandywine Realty Trust ("Brandywine") under the supervision of defendant H. Jeffrey
DeVuono. Plaintiff asserts claims for violation of: Pennsylvania's Wage Payment Collection
Law, 43 Pa. Cons. Stat. § 260.1 *et seq.* (Count I); breach of contract (Count II); unjust
enrichment (Count III); wrongful discharge (Count IV); retaliation in violation of the Fair Labor
Standards Act, 29 U.S.C. § 215(a)(3) (Count V); and age discrimination in violation of the Age
Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (Count VI) and the
Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 (Count VII). Presently before the
Court is defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons that
follow, the Court grants in part and denies in part the Motion to Dismiss.

### II.      BACKGROUND

The facts of this case as set forth in plaintiff's Amended Complaint are as follows.
Plaintiff is now fifty-one years old. Am. Compl. ¶ 17. Until December 2014, he was employed
by Brandywine, a real estate company that is publicly traded on the New York Stock Exchange.

Am. Compl. ¶¶ 15. He was hired by Brandywine in April 2000 as a leasing representative, and repeatedly promoted until he was made a Vice President of Leasing in 2011. Am. Compl. ¶¶189–24. In that role, he was responsible for leasing 4.2 million square feet of Brandywine property in the western suburbs of Philadelphia. Am. Compl. ¶ 30. Defendant H. Jeffrey DeVuono was plaintiff's direct supervisor as Executive Vice President and Senior Managing Director of Brandywine. Am. Compl. ¶¶ 16, 35.

In 2014, Brandywine began negotiating a leasing deal with CenterSquare Investment Management ("CIM"), one of Brandywine's tenants. Am. Compl. ¶ 39. CIM is "affiliated" with BNY Mellon, which itself is a major investor in Brandywine. Am. Compl. Am. Compl. ¶¶ 36–38. Under the terms of the deal, CIM would "move its offices" and occupy space in another Brandywine property. Am. Compl. ¶ 39. For reasons not explained in the Amended Complaint, the CIM deal did not close. Am. Compl. ¶ 40. Plaintiff avers that "because BNY Mellon is a major investor in Brandywine and because CIM represents and/or provides services to other persons and/or entities who are major investors in Brandywine, Brandywine elected to provide[] a concession to CIM of approximately $200,000 when the CIM Deal did not close." Am. Compl. ¶ 41. Plaintiff alleges that CIM subsequently leased a different Brandywine property and that because of this Brandywine "did not actually experience a loss in connection with the CIM deal." Am. Compl. ¶ 43.

Plaintiff claims that he was "scapegoated" and blamed for the failure of the CIM deal even though he "did nothing wrong" and his actions were "known to defendants." Am Compl. ¶ 47–48. After the deal failed to close, in "mid-2014," defendants demanded that plaintiff "authorize a wage deduction of approximately $200,000." Am. Compl. ¶¶ 52–53. In 2014, plaintiff's salary exceeded $300,000 annually. Am. Compl. ¶ 25. Nonetheless, plaintiff claims

that if he had accepted the wage deduction he would have been forced to work for Brandywine for "a period of no less than six months without receiving compensation of any kind." Am. Compl. ¶ 53. He refused to accept the wage deduction and told defendants that the deduction was unlawful. Am. Compl. ¶¶ 54–57.

On December 5, 2014, defendants told plaintiff that he was fired effective December 31, 2014. Am. Compl. ¶ 59. Plaintiff alleges that "defendants explained to plaintiff that he would not have been terminated but for his refusal to authorize a wage deduction in connection with the CIM deal." Am. Compl. ¶ 60. Further, he avers that he was told that he was fired "because he complained and because he refused to reimburse Brandywine for its alleged loss" by accepting the wage deduction. Am. Compl. ¶ 61.

It is plaintiff's contention that the wage deduction and firing would not have occurred but for his age, then-forty-nine years. Am. Compl. ¶ 65. Plaintiff alleges that DeVuono "and Brandywine's upper management, made overtly negative comments regarding plaintiff's age." Am. Compl. ¶ 49. Brandywine's president, Gerard H. Sweeney, "questioned plaintiff about his age, and when hearing plaintiff's response, stated that he did not know that plaintiff was so old." Am. Compl. ¶ 50.

Plaintiff claims that at the time he was fired, he was owed $122,000 in bonus and $90,707 in holdback commission under the terms of Brandywine's Leasing Compensation Program. Am. Compl. ¶¶ 83, 87. Furthermore, "when informing plaintiff that his employment was being terminated, defendants specifically and orally promised plaintiff that he would be paid all compensation due and owing to him, including all commissions . . . , holdbacks, and bonuses." Am. Compl. ¶ 93. Brandywine offered plaintiff two different severance agreements,

both of which provided him with less benefits and severance pay than Brandywine "routinely provides . . . to younger employees." Am. Compl. ¶¶ 69–75.

On January 22, 2016, plaintiff filed his Complaint in this case. After defendants filed a Motion to Dismiss, plaintiff filed an Amended Complaint on March 8, 2016. The Amended Complaint includes seven counts: violation of Pennsylvania's Wage Payment Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq.* (Count I); breach of contract (Count II); unjust enrichment (Count III); wrongful discharge (Count IV); retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) (Count V); and age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (Count VI) and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 (Count VII). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Defendants filed a Motion to Dismiss on March 21, 2016, which is now fully briefed.

### III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses

4

"the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, the Court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.   DISCUSSION

In the Motion to Dismiss, defendants argue that the Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court grants in part and denies in part the Motion to Dismiss. The Court grants the Motion to Dismiss in part, and dismisses (1) plaintiff's claims for unjust enrichment and wrongful discharge for failure to state a claim as a matter of law, and (2) plaintiff's claims under the Age Discrimination in Employment Act and Pennsylvania Human Relations Act arising from his termination because these claims are time-barred. The Court denies the Motion to Dismiss in all other respects.

### A.  Wage Payment Collection Law and Breach of Contract Claims

Defendants argue that plaintiff's claims under the Pennsylvania Wage Payment Collection Law ("WPCL") and for breach of contract should be dismissed for failure to plead the existence of a promise to pay wages or an enforceable contract. The Court rejects this argument.

To state a breach of contract claim under Pennsylvania law, plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract

and (3) resultant damages." *Jacoby v. AXA Equitable Life Ins. Co.*, Civil Action No. 13-6511, 2014 WL 7058224, at *3 (E.D. Pa. Dec. 15, 2014) (quoting *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[T]he WPCL provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953 (Pa. Super. Ct. 2011). "Wages" for purposes of the WPCL include "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation" and "fringe benefits or wage supplements," such as bonuses or "any other amount to be paid pursuant to an agreement to the employee . . . ." 43 Pa. Const. Stat. Ann. § 260.2a. "To present a wage payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Braun*, 24 A.3d at 954. "[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer." *Id.* (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)).

The Amended Complaint alleges the existence of two contracts as the basis for plaintiff's WPCL and breach of contract claims. First, plaintiff avers that he is entitled to bonus and commission hold-backs under the terms of Brandywine's Leasing Compensation Program, a document that plaintiff claims embodies the terms of an enforceable agreement between plaintiff and defendants. *See* Am. Compl. ¶ 91. Under the facts alleged in plaintiff's Amended Complaint,

the Leasing Compensation Program constitutes a written promise to pay wages and thus serves as the basis for a breach of contract and/or WPCL claim. Defendants argue that "[c]ontrary to plaintiff's misleading allegations, Brandywine's Leasing Compensation Program . . . is not a contract . . . ." Defs. Mem. in Supp. of Mot. to Dismiss, at 6. The parties have not provided this document to the Court and thus the Court takes as true the allegations in plaintiff's Amended Complaint that the Leasing Compensation Program is an enforceable written agreement between the parties to pay the bonuses and hold-backs.[1]

In addition, regardless of whether the Leasing Compensation Program forms the basis of a valid and enforceable promise to pay wages, plaintiff's Amended Complaint also describes an oral promise to pay. Specifically, plaintiff avers "when informing plaintiff that his employment was being terminated, defendants specifically and orally promised plaintiff that he would be paid all compensation due and owing to him, including all commissions, hold-backs, and bonuses." Am. Compl. ¶ 93. Plaintiff further avers that he was never paid any bonuses or hold-backs after he was fired. Am. Compl. ¶ 94. These allegations establish an oral promise to pay for purposes of the WPCL and set out a prima facie case of breach of contract. Thus, defendants' Motion to Dismiss the WPCL and breach of contract claims is denied.

## B.  Unjust Enrichment Claim

Defendants argue that plaintiff's unjust enrichment claim should be dismissed for failure to state a claim. The Court agrees and dismisses the unjust enrichment claim with prejudice.

---

[1] Had defendants attached this document to their Motion to Dismiss, the Court could have considered whether the unambiguous terms of the Leasing Compensation Program barred plaintiff's claims without converting the Motion to Dismiss into a motion for summary judgment. *See Mayer*, 605 F.3d at 230 (explaining that the Court may consider in ruling on a Rule 12(b)(6) motion "undisputedly authentic documents if the complainant's claims are based upon these documents"). While the Court could order the parties to produce the document, the Court declines to do so in light of its determination that plaintiff's Amended Complaint also states a claim based on an oral promise to pay the bonuses and hold-backs.

Under Pennsylvania law, "[t]he elements of unjust enrichment are [1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993) (quotations and citations omitted). A claim for unjust enrichment is viable "in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896–97 (Pa. Super. Ct. 2011) (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969)). Because unjust enrichment provides a remedy in the absence of a contract, "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Id.* at 897 (quoting *Schott*, 259 A.3d at 448). In the employment context, to state a claim for unjust enrichment, plaintiff must allege that he did "more than work to the best of his abilities for defendant as he was engaged to do." *Herbst v. General Acc. Ins. Co.*, Civil Action No. 97-8085, 1999 WL 820194, at *9 (E.D. Pa. Sept. 30, 1999).

At the pleadings stage of litigation, prior to discovery, Federal Rule of Civil Procedure 8(d)(2) allows plaintiff to plead unjust enrichment in the alternative to a breach of contract claim even if plaintiff will not be able to recover under both theories. *See, e.g.*, *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) ("[A] claim for breach of contract and unjust enrichment can coexist at this early stage of litigation."). While pleading in the alternative is allowed under the Federal Rules of Civil Procedure, the unjust enrichment claim must still be viable on its own. *See, e.g.*, *Sheinman Provisions, Inc. v. National Deli, LLC*, Civil Action No.

08-453, 2008 WL 2758029 (E.D. Pa. July 15, 2008) ("Rule 8 only allows alternative claims to be

plead if all of the claims are sufficient on their own.").

In this case, plaintiff asserts only that he was not paid adequately for work performed

within the scope of his employment. Plaintiff admits that it was his primary job responsibility to

lease Brandywine's properties in his geographic region. Am. Compl. ¶ 30. Plaintiff avers that he

"consistently completed transactions and generated revenues well in excess of the targets

established by Brandywine" and that he was a "top performer." Am. Compl. ¶ 31, 33. However,

these allegations do not state a claim for unjust enrichment, in the absence of other unique

circumstances outside the scope of the employment relationship that would render the retention

of the benefit conferred by the employee inequitable. *See Ankerstjerne v. Schlumberger, Ltd.*,

155 F. App'x 48, 54 ("The plaintiff has not shown that he provided the defendants with anything

more than the work he was hired to do.").

Plaintiff attempts to argue that he was treated inequitably based on Brandywine's

obligations under the Leasing Compensation Program, which he contends are "mandatory." Pl.'s

Resp. to Mot. to Dismiss, at 13. However, an unjust enrichment claim that presupposes the

existence of a valid and enforceable contract is not cognizable under Pennsylvania law. *See*

*Braun*, 24 A.3d at 897. Thus, plaintiff cannot rely on the binding effect of the Leasing

Compensation Program to establish an unjust enrichment claim. Because plaintiff's unjust

enrichment claim fails as a matter of law and amendment would be futile, the Court dismisses

this claim with prejudice.

### C.  Wrongful Discharge Claim

Defendants argue that plaintiff's wrongful discharge claim should be dismissed because

plaintiff fails to establish that his claim fits within the narrow public policy exceptions to

Pennsylvania's general policy of at-will employment. The Court agrees and dismisses plaintiff's wrongful discharge claim with prejudice.

"[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Id.* at 918–19. "[W]here the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Geary v. U.S. Steel Corp.*, 319 A.3d 174, 184 (Pa. 1974) (affirming grant of preliminary objections in form of *demurrer*). "An essential element in permitting a cause of action for wrongful discharge is a finding of a violation of a clearly defined mandate of public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.'" *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1026 (Pa. Super Ct. 1991) (quoting *Hineline v. Stroudsberg Electric Supply Co., Inc.*, 559 A.2d 566, 568 (Pa. Super Ct. 1989)). To assert a claim for wrongful discharge, plaintiff must have no available statutory remedy. *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir. 1983).

Courts have recognized only a very small number of cases that meet these requirements. *See Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 516 (Pa. 2005) (termination of supervisor for failure to dissuade subordinate from filing Workers Compensation Act claim); *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998) (termination for filing a Workers Compensation Act claim); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121 (Pa. Super. Ct. 1978) (termination for missing work due to jury service); *Novosel v. Nationwide Ins. Co.*, 721 F.2d

894, 900–01 (3d Cir. 1983) (termination for refusal to participate in private employer's lobbying effort after employee stated his opposition to employer's political stand). Pennsylvania courts have generally disfavored wrongful discharge claims in cases involving disputes over wages, commissions, and bonuses. *See Booth v. McDonnell Douglas Truck Servs., Inc.*, 585 A.2d 24, 28 (Pa. Super. Ct. 1991). In *Booth*, plaintiff asserted a claim for wrongful discharge after he was fired for asserting a claim under the WPCL. *Id.* at 243. The Superior Court concluded that an employer may fire an employee for insisting on pay as promised. *Id.* ("[T]he compensation due an employee is clearly an area where the employer has a legitimate interest, and we find no violation of public policy here."). In support of this conclusion, the court explained that plaintiff could recover under a breach of contract theory for any compensation due and owing. *Id.* at 244.

Plaintiff argues that this case is distinguishable from *Booth* because plaintiff "refused to assent to a wage deduction which would have resulted in working without any pay." Pl.'s Resp. to Mot. to Dismiss, at 15. Setting aside whether plaintiff's contention that he would have been paid nothing for six months after a $200,000 wage deduction is plausible when his annual earnings were "in excess of" $300,000, the Court concludes that the reasoning of *Booth* is persuasive. In that case, the Superior Court declined to create a cause of action for wrongful discharge due to a decision to terminate rather than pay wages because "to adopt Booth's position would mean that any time an employee is discharged due to a dispute over compensation due him, the employer would be liable because it asserted its position." *Booth*, 585 A.2d at 24. In this case, the Court concludes that even if plaintiff was fired for refusing to accept the wage deduction, this dispute over compensation would not threaten a clear mandate of public policy so as to constitute an exception to the general policy of at-will employment. Accordingly,

the Court concludes that plaintiff's claim for wrongful discharge fails as a matter of law and dismisses the claim with prejudice because amendment would be futile.

### D.  Fair Labor Standards Act Retaliation Claim

Defendants argue that plaintiff's Fair Labor Standards Act retaliation claim must be dismissed because plaintiff fails to allege circumstantial evidence supporting an inference of retaliation. The Court denies the Motion to Dismiss this claim because plaintiff has alleged direct evidence of retaliation.

The Fair Labor Standards Act ("FLSA") provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has field any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). This provision includes both formal written complaints and oral complaints to supervisors. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). The employee's complaint need only be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14. The employee need not directly invoke FLSA in the complaint. *See, e.g.*, *Childs v. Universal Cos.*, Civil Action No. 15-3507, 2016 WL 1623159, at *4–5 (E.D. Pa. Apr. 22, 2016).

In this case, plaintiff alleges that when he refused to accept the $200,000 wage deduction, he told defendants that he believed the wage deduction would result in him working without pay and therefore was unlawful. Am. Compl. ¶¶ 53–58. A reasonable employer in Brandywine's position would understand that a complaint in which an employee refused to work for no pay stated a complaint for violation of FLSA. Plaintiff avers that when he was terminated, he was told that he was being terminated "because he complained" that the wage deduction was

12

unlawful. Am. Compl. ¶ 62. Thus, plaintiff's allegations, taken as true, state a prima facie case of FLSA retaliation. Accordingly, defendants' Motion to Dismiss the FLSA retaliation claim is denied.

### E.  Age Discrimination Claims

Defendants argue that plaintiff's age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA") are time-barred.[2] The Court agrees that plaintiff's age discrimination claims arising out of his termination are time-barred and dismisses these claims with prejudice. However, the Court concludes that plaintiff may proceed with his age discrimination claims arising out of the allegedly discriminatory severance package.

In Pennsylvania, a charge of discrimination must be filed within 300 days of the date of the alleged discrimination. *Bailey v. United Airlines*, 279 F.3d 194, 197 (3d Cir. 2002). A decision to terminate made in advance of the date of actual termination is a discriminatory act and the time to file begins to run from when the employee becomes aware of the unlawful decision to terminate. *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 856 (3d. Cir. 2000). Under the continuing violation doctrine, plaintiff may assert a claim for a continuing course of conduct if plaintiff demonstrates (1) at least one act within the filing period; and (2) harassment that is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995). "[I]f an event or series of events should have alerted a reasonable person to act or assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event or series of

---

[2] The ADEA and PHRA claims are evaluated under the same legal standard. *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 432 (3d Cir. 2013).

events." *Hicks v. Big Brothers/Big Sisters of Am.*, 944 F. Supp. 405, 408 (E.D. Pa. 1996) (citing

*Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993)). "Discrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges . . . . Discrete acts include, for example, termination, failure to promote,

denial of transfer, or refusal to hire." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d

Cir. 2013).

In this case, plaintiff filed his Charge of Discrimination with the EEOC on October 22,

2015. Thus, any of plaintiff's claims arising out of adverse employment actions that occurred

prior to December 26, 2014, including plaintiff's termination on December 4, 2014, are time-

barred unless the continuing violations doctrine applies.

Plaintiff argues that the continuing violations doctrine should save his termination claim

because he was offered a discriminatory severance package after December 26, 2014. While the

severance package, if it was offered after December 26, 2014, may be independently actionable,

as discussed below, it does not provide a basis for application of the continuing violations

doctrine to plaintiff's termination. Defendants informed plaintiff that he was fired on December

4, 2014. That was clearly a discrete discriminatory act that should have "alerted a reasonable

person to act or assert his . . . rights." *Hicks*, 944 F. Supp. at 408. While plaintiff was fired

effective December 31, 2014, the time to file began when plaintiff was informed that he was

fired. *Watson*, 235 F.3d at 856. Thus, because plaintiff did not bring a claim within 300 days of

being told he was fired, any claim for age discrimination based on the adverse action of

termination is time-barred.

Plaintiff also asserts a claim for age discrimination based on his severance package. To

establish a *prima facie* case of age discrimination under ADEA, plaintiff must show that (1) he is

over forty years old; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) he was replaced by a sufficiently younger person to permit an inference of age discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). A severance package can be an adverse employment decision and provide a basis for an independent claim for discrimination because a severance package is a "term, condition, or privilege of employment." *See Cohn v. Integra Fin. Corp.*, Civil Action No. 96-247, 1996 WL 648427, at *3 (E.D. Pa. Oct. 31, 1996). Plaintiff may establish a prima facie case of age discrimination under ADEA if he was offered a lower severance package than other younger employees because of his age. *See, e.g.*, *James v. Teleflex, Inc.*, Civil Action No. 97-1206, 1998 WL 966009, at *8 (E.D. Pa. Dec. 23, 1998).

In this case, plaintiff alleges that he was provided a severance package that offered him "nothing of value." Am. Compl. ¶¶ 70, 74. It is plaintiff's contention that "Brandywine routinely provides severance agreements to younger employees with substantial severance pay." Am. Compl. ¶ 75. Plaintiff avers that he would have been offered a superior severance package but for his age. Am. Compl. ¶ 77. Plaintiff avers that the severance package was offered to him in late-December 2014 or early-January 2015, within the 300 day window. Am. Compl. ¶ 72. At this early stage of the litigation, these allegations set forth a prima facie case of age discrimination under the ADEA arising out of the allegedly discriminatory severance package.

For these reasons, the Court grants defendants' Motion to Dismiss plaintiff's age discrimination claims based on his termination as time-barred, but denies the Motion to Dismiss plaintiff's claims based on the severance package.

**V.      CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part defendants' Motion to Dismiss. Plaintiff's unjust enrichment (Count III) and wrongful discharge (Count IV) claims are dismissed with prejudice for failure to state a claim. Plaintiff's age discrimination claims under ADEA and PHRA based on his termination (contained in Counts VI–VII) are dismissed with prejudice as time-barred. The claims that remain in the case are as follows: violation of WPCL (Count I), breach of contract (Count II), FLSA retaliation (Count V), and age discrimination under ADEA and PHRA based on plaintiff's severance package (contained in Counts VI–VII). An appropriate order follows.